UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
GOLDMAN SACHS & CO. LLC, and THE
GOLDMAN SACHS GROUP, INC.,

                            Petitioners,

                -against-

TIM LEISSNER,

                            Respondent.
-------------------------------------------------------------------------X

**23 Civ. 5266 (JLR) (GS)**

**<u>ORDER</u>**

**GARY STEIN, United States Magistrate Judge:**

On February 27, 2026, the Court held a video conference with respect to the letter motion filed by Petitioners ("Goldman") to compel production from non-parties Kimora Lee Simmons ("Lee"), Robinson & Company LLC, and G. Robinson & Company, LLC (collectively, the "Non-Parties"), as well as from Respondent ("Leissner"), who is the judgment debtor in this case and Lee's husband. (Dkt. No. 34; *see* Dkt. Nos. 38 & 40).

At the conference, Lee stated her position that much of the discovery Goldman seeks should be blocked by a Postnuptial Agreement entered into between Lee and Leissner in 2021.[1] Goldman, which challenges the validity of the Postnuptial Agreement, asserted that the Agreement is not a basis for precluding discovery at this time. The Court granted Lee's request for expedited briefing on the topic. (*See also* Dkt. No. 51).

---

[1] A redacted version of the Postnuptial Agreement can be found at Docket Number 58. An unredacted version is presently filed under seal at Docket Number 59. The Court will subsequently determine which portions, if any, of the Postnuptial Agreement should remain redacted. (*See* Dkt. No. 57).

On March 4, 2026, the Non-Parties filed their letter brief arguing that the Postnuptial Agreement should block several categories of discovery, in particular information concerning Lee's "income and other assets obtained without any contribution from [Respondent] and in which he has no interest." (Dkt. No. 54 ("Non-Parties Br.") at 1). The Non-Parties argue that the Postnuptial Agreement "characterizes" as Lee's "separate property" the property she earned or obtained prior to her marriage with Leissner and through and after the Agreement. (*Id.* at 2–3). Because Goldman "has not and cannot offer any reason to dispute the validity of the postnuptial agreement to the extent that it characterizes as separate property assets earned solely by [Lee], and without [Leissner's] even alleged involvement," the Non-Parties argue that the Postnuptial Agreement should block such discovery. (*Id.* at 4).

On March 6, 2026, Goldman filed its letter brief in response, arguing that the Postnuptial Agreement should not impede discovery. (Dkt. No. 60 ("Pet. Br.")).[2] Goldman makes three main arguments. First, Goldman argues that Judge Rochon heard and affirmatively denied the Non-Parties' argument on this point during a February 11, 2026 conference before her. (*Id.* at 1–2). Second, Goldman argues that testimony given by Leissner as a cooperating witness at the criminal trial of his former Goldman colleague, Roger Ng, as well as at his deposition in this case, show that Leissner previously transferred substantial assets through accounts and

---

[2] A corrected copy of the brief was filed on Monday, March 9, 2026, at Docket Number 61.

shell companies that were nominally owned by Lee but controlled by Leissner.  (*Id.* at 3–4).  Third, Goldman claims that the Postnuptial Agreement is an "obvious fraud" that bears many of the hallmarks courts consider when voiding conveyances as fraudulent.  (*Id.* at 4–5).

For the reasons stated below, the Non-Parties' request to limit discovery based on the Postnuptial Agreement is **DENIED**.

At the outset, the Court declines to find that Judge Rochon resolved this issue during the February 11 conference.  It is true that Judge Rochon made explicit that discovery had "taken too long" and needed to move forward.  (Dkt. No. 52[3] ("Tr.") at 26:12).  And it is similarly true that Judge Rochon stated that there is no "broad objection that can be raised [to the subpoenas] based on marital privilege or privacy interests."  (Tr. at 27:12).  But that is distinct from a finding that the Postnuptial Agreement, which allegedly keeps Lee's property wholly separate, could not present a gateway issue.  Judge Rochon made no ruling as to that issue and instead repeatedly emphasized that the undersigned would handle this discovery portion of the proceedings.  (Tr. at 26:24–27:8; 27:10–11; 27:15–19; 28:15–19; 29:13–19).

Nonetheless, upon a full review of the letter briefs, the Postnuptial Agreement, and the applicable case law, the Court agrees with Goldman that the Agreement warrants no limitation on the scope of discovery.

---

[3] The transcript is currently under seal in order to allow the parties to make redaction requests.  (*See* Dkt. No. 53).

"[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). Post-judgment discovery is governed by Federal Rule of Civil Procedure 69, which provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). The scope of that discovery is constrained principally in that it must be calculated to assist in collecting on a judgment. *See id.*; Fed. R. Civ. P. 26(b)(1) (allowing a court to "order discovery of any matter relevant to the subject matter involved in the action"). "New York state's post-judgment discovery procedures, made applicable to proceedings in aid of execution by Federal Rule 69(a)(1), have a similarly broad sweep." *EM Ltd.*, 695 F.3d at 207. "As a general matter, however, post-judgment discovery against a non-party should be limited to a search for the [judgment debtor's] hidden assets." *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219 (PKC) (DF), 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012).

Courts routinely allow judgment creditors to seek asset discovery from third parties who possess information pertaining to the judgment debtor's assets. *See EM Ltd.*, 695 F.3d at 207–08 (collecting cases). And the Non-Parties do not contest that Rule 69 discovery is broad. (Non-Parties Br. at 3). Nonetheless, as noted, the Non-Parties argue that the existence of the Postnuptial Agreement, specifying certain

property as separate property, means that such materials could never be recovered as Leissner's assets in collection proceedings.  Accordingly, the Non-Parties argue that discovery should be prohibited as to these categories of assets.

But the Postnuptial Agreement does not actually identify which property in Lee's name was earned by Lee or obtained prior to her marriage to Leissner or without any contribution from Leissner.  Schedule A to the Postnuptial Agreement, which is presently under seal, lists various assets characterized in the Agreement as Lee's "separate property," but it does not identify which assets fall into the categories that Lee claims should be exempt from discovery.  Nor has Lee provided any factual basis at this stage for distinguishing between assets that are indisputably hers and those that may be Leissner's.  Discovery will be needed to establish these facts.

Moreover, there is ample reason to believe that some of the assets characterized in the Postnuptial Agreement as Lee's "separate property" in fact belong to or were derived from Leissner.  As Goldman has noted, Leissner previously testified under oath that he transferred large sums of money into accounts and investments titled in Lee's name and into shell companies nominally or beneficially owned by her.  (Dkt. No. 34 at 2 and Ex. A; Pet. Br. at 3).  Leissner also testified that Lee was at least present during certain of his efforts to conceal assets offshore.  (Dkt. No. 34 at 2 and Ex. B; Pet. Br. at 3–4).  In addition, according to Goldman, unredacted portions of the Postnuptial Agreement itself show that Leissner used purportedly separate assets of Lee to satisfy his forfeiture obligations

5

to the United States.  (Pet. Br. at 4).[4]  As Goldman persuasively argues, these facts

"create a 'reasonable doubt' regarding the ownership of assets held in [Lee's] name

and about the nature of transfers of assets between [Respondent] and [Lee]." *Res.

Grp. Int'l Ltd. v. Chishti*, No. 25 Civ. 1021 (JSR), 2025 WL 2670978, at *2 (S.D.N.Y.

Sept. 17, 2025); *see also Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559,

562 (S.D.N.Y. 1977) ("Discovery has been permitted against a non-party where the

relationship between the judgment debtor and the non-party is sufficient to raise a

reasonable doubt about the bona fides of the transfer of assets between them."

(collecting cases)).

Such a conclusion is particularly warranted here, as courts have found that

"[w]here spouses are involved, even a slight showing that there has been a transfer

of property from the debtor spouse to the other spouse may be sufficient for the

court to allow a judgment creditor to delve into the personal assets of a third-party."

*VFS Fin., Inc. v. Specialty Fin. Corp.*, No. 3:09-CV-00266-RCJ, 2013 WL 1413024,

at *4 (D. Nev. Apr. 4, 2013) (internal citations and quotations omitted); *see also id.*

at *6 (finding that the "creation of two post-nuptial agreements does not eliminate

the court's doubt as to the propriety of [debtor's] asset transfers to his wife")

(internal citations and quotations omitted); *Internet Direct Response, Inc. v. Buckley*,

No. SACV 09–01335 ABC (MLGx), 2010 WL 1752181, at *4–5 (C.D. Cal. Apr. 29,

2010) (denying spouse's request for a protective order prohibiting judgment creditor

---

[4] Paragraph 6 of the Postnuptial Agreement, presently under seal, lends further support to
Goldman's argument that Leissner transferred his own assets to Lee.  (Dkt. No. 59 ¶ 6).

from obtaining information about her allegedly "separately owned property," as her and the judgment debtor's "entry into two postnuptial agreements and filing of separate tax returns does not eliminate the Court's doubt about the validity of asset transfers between them").

It also bears emphasis that "a third party may not avoid discovery by merely submitting an affidavit asserting his ownership over the property in dispute." *Davis Acoustical Corp. v. Skulnik*, 131 N.J. Super. 87, 328 A.2d 633, 636 (App. Div. 1974) (citing *De Lepomme v. Luquer*, 39 N.Y.S.2d 283 (N.Y. Sup. Ct. 1943)); *In re De Ponce De Leon*, 63 App. Div. 41, 71 N.Y.S. 380 (1st Dep't 1901); *First National Bank v. Gow*, 139 App. Div. 576, 124 N.Y.S. 449, 451 (1st Dep't 1910)) (under a rule of court substantially similar to Rule 69).  That is in essence what Lee seeks to do here—except that she has *not* submitted an affidavit and merely asks the Court to accept at face value her counsel's assertions, which are insufficient to establish what assets belong to Lee alone.  Goldman ought to be afforded the opportunity to obtain and review relevant discovery materials from the Non-Parties as part of its efforts to identify assets of Leissner that may be used to satisfy its judgment. Accordingly, while the Court does not decide or intimate any view as to the validity of the Postnuptial Agreement, it finds that the Agreement does not stand in the way of discovery.

In the interim, the Protective Order in this action (Dkt. No. 33) adequately protects Lee's personal information and privacy interests.  Additionally, nothing herein prevents the Non-Parties from arguing that Goldman's discovery requests

are objectionable on other individualized bases, such as overbreadth or vagueness. With the gateway issue of the Postnuptial Agreement now resolved, Goldman and the Non-Parties shall proceed to meet and confer so that the Non-Parties can expeditiously satisfy their discovery obligations.  A status report shall be filed by no later than Friday, March 20, 2026.

Accordingly, the Non-Parties' application to limit discovery based on the Postnuptial Agreement is **DENIED.**  The Clerk of Court is respectfully requested to close the motion pending at Docket Number 54.

**SO ORDERED.**

DATED:      New York, New York
            March 9, 2026

The Honorable Gary Stein
United States Magistrate Judge

8