# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 20, 2026

Via ECF

The Honorable Gary Stein,
    United States District Court,
        Southern District of New York,
            500 Pearl Street, Courtroom 9A,
                New York, New York  10007.

Re:    *Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc.* v. *Tim Leissner*, No. 23-cv-05266-JLR (closed 10/26/2023)

Dear Judge Stein:

Petitioners Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc. ("Goldman Sachs"), together with Respondents Kimora Lee, Robinson & Company, LLC and G. Robinson & Company LLC ("the Robinsons" or "the Robinson Entities"), submit this Joint Status Report pursuant to Your Honor's April 22, 2026 Order directing the parties to file a joint letter "detailing their progress in discovery."  ECF 72, at 2.

On April 22, 2026, Your Honor ordered Ms. Lee and the Robinsons to "substantially complete their 'first phase' production of the agreed-upon Newland and Celsius documents in the possession of the Robinson Entities by no later than May 13, 2026."  ECF 72, at 1.  As to the agreed upon documents, Ms. Lee and the Robinsons were to produce, as to the assets and investments (together "investments") under Newland and Celsius:

- Records showing the acquisition of these investments, including transaction and other records showing the amount, transfer and source of funding for the investment, from whom the investment was acquired, the nature of the investment, and the owner of the investment upon acquisition.

- Records reflecting any disposition of these investments, including transaction and other records reflecting the parties to, date and amount of the sale, the proceeds or other consideration received for the sale, the transfer of such proceeds or consideration (including the account and recipient of such proceeds/consideration), and the current location/owner of, and account, holding such proceeds/consideration.

- To the extent Ms. Lee still holds these investments, the size and current value of the holding and where and how the investments are held.

The Court further ordered Ms. Lee to "produce any non-duplicative documents in her possession, custody, or control identified as a result of her supplemental searches for noncommunication Newland and Celsius documents, or provide a written representation to Petitioners that no such documents were identified as a result of the search, by no later than May 13, 2026."  ECF 72, at 1- 2.

The Robinsons and Ms. Lee together produced 238 documents on May 13, 2026.

a.  *Position of Goldman Sachs*.  Despite the Court's Order, Ms. Lee's and the Robinsons's production includes essentially none of the material they were ordered to produce. For example, Ms. Lee and the Robinsons produced essentially no documents showing the location, source of funding, or any disposition of the following Newland[1] assets:[2]

- $30 million in Mermaid Investment;

- $14 million in Midas Commodities;[3]

- $10 million in Baby Phat;

- $5 million in PureForm Holding;

- $4 million in Codage;

- $4 million in Blaze Ventures;

- $3.2 million in Phat Farm Holdings;

- $2 million in Friendsurance; and

- $2 million in Sentinent.

Ms. Lee has produced essentially no documents showing the "amount, transfer and source of funding for" *any* of the investments listed above or "from whom the investment was acquired, the nature of the investment, and the owner of the investment upon acquisition."  Likewise, to the extent there has been a disposition of these assets over the years, Ms. Lee and the Robinsons also produced essentially no documents reflecting "any disposition of these investments, including transaction and other records reflecting the parties to, date and amount of the sale, the proceeds or

---

[1] Tim Leissner testified that Newland is a shell company in which he secreted over $100 million in criminal proceeds into and nominally put in Ms. Lee's name.  Ng Tr. 2302:25-2303:15; 2366:13-23.

[2] Goldman Sachs has sought information on most of these entities for over six months.  The values shown are as of 2022 according to a document produced by the Robinson Entities.

[3] Based on Leissner's testimony as a cooperating witness for the DOJ, Goldman Sachs understands that Midas is a subsidiary shell company that holds assets of value.

other consideration received for the sale, the transfer of such proceeds or consideration (including the account and recipient of such proceeds/consideration), and the current location/owner of, and account, holding such proceeds/consideration." To the extent Ms. Lee still holds these investments—which it is impossible to tell because she has produced no documents reflecting whether or to what extent that is the case—she has produced no documents showing "the size and current value of the holding and where and how the investments are held." Far from being substantially complete, Ms. Lee's and the Robinsons's production indicates that Ms. Lee has over $100 million of assets in Newland, but essentially no records reflecting the "amount, transfer and source of funding for" any of the investments listed above, "from whom the investment was acquired, the nature of the investment, and the owner of the investment upon acquisition," and, to the extent there has been any disposition of these assets, records "reflecting the parties to, date and amount of the sale, the proceeds or other consideration received for the sale, the transfer of such proceeds or consideration (including the account and recipient of such proceeds/consideration), and the current location/owner of, and account, holding such proceeds/consideration." The majority of the production simply contained agreements between and among Ms. Lee and the shell entities and organizational documents related to the shell entities.

Ms. Lee and the Robinsons also produced essentially no responsive materials as to Celsius,[4] including no records as to the source of funding for the supposed investment, disposition of the Celsius shares, the use of proceeds from a $12 million sale of Celsius shares in August 2020, or where the proceeds are located today.

At the April 22nd conference, Goldman Sachs informed the Court that it understands Ms. Lee may shortly receive Celsius stock in a settlement of disputed claims in the forfeiture proceeding in Leissner's criminal case, and that Goldman Sachs had asked counsel if Ms. Lee would agree to not transfer or dissipate the stock pending the outcome of this dispute before the Court. *See* April 22, 2026 Tr. 26:5-17. Goldman Sachs did not receive a response from counsel after the April 22nd conference and followed up by email on April 27th and May 13th. Goldman Sachs renews its request that Ms. Lee commit to not dissipating any Celsius shares pending the outcome of this matter.

In light of counsel's failure to agree that Ms. Lee will not dissipate Celsius shares pending the outcome of this dispute, Goldman Sachs respectfully requests that the Court ask Ms. Lee to make that commitment.

Bank of America is also objecting to producing materials in response to Goldman Sachs's discovery requests based on Ms. Lee's privacy concerns. Goldman Sachs respectfully requests that the Court compel Ms. Lee to notify Bank of America that she does not object to their production of the subpoenaed materials.

As to Ms. Lee's complete failure to provide a substantive response and to make any representation to Goldman Sachs as required by the Court's April 22 Order, Goldman Sachs

---

[4] Mr. Leissner testified as a cooperating witness for the DOJ that, following his arrest in 2018, he took 3.9 million shares of Celsius stock owned through Nu Horizons Investment Group and transferred them to Ms. Lee's brokerage account. Ng Tr. 2333:9-2334:17; Ng Tr. 2339:14-19.

believes Ms. Lee should be ordered to file sworn declaration identifying the nature and scope of searches she conducted.

Goldman Sachs respectfully requests that the Court order Ms. Lee and the Robinsons to produce the documents responsive to the agreed-upon first phase of production or prepare a written response providing the information forthwith.

b. *Position of Ms. Lee. and the Robinson Entities*

As an initial matter, Ms. Lee has informed Goldman Sachs, through her counsel of record that :

- Ms. Lee is not willing to agree to Goldman Sachs's demand that she restrict the use of her assets. As set forth below, Goldman Sachs has not, and cannot, make any showing to justify such extraordinary prejudgment relief.

- Ms. Lee has conducted supplemental searches and identified no further non-email responsive documents in her possession apart from those documents held by the Robinson Entities.[5]

Ms. Lee and the Robinson Entities have fully complied with the Court's discovery order and have produced all non-email records regarding Newland and Celsius they were able to locate following a reasonable and diligent search. Goldman Sachs's accusations to the contrary are simply wrong. Had Goldman made any effort to meet and confer prior to drafting the Joint Status Report and sending it to counsel for Ms. Lee and the Robinson Entities the night before it is required to be filed, counsel could have pointed Goldman Sachs to a number of documents regarding the investments and entities listed above. Indeed, the fact that Goldman Sachs chose not to raise any of its concerns prior to this filing and seem to have ignored multiple responsive documents confirms that it is more interested in casting aspersions on Ms. Lee than in reviewing materials produced in discovery.

To date, Ms. Lee and the Robinson Entities have produced almost 6,000 pages of documents responsive to Goldman Sachs's requests, including materials showing the acquisition of investments, the amount of investment capital and from which accounts it was wired, how investments were transferred between entities, the estimated value of investments over the relevant period, and the dissipation of investments. Depending on the particular entity or investment and the documents currently retained by Ms. Lee and the Robinson Entities, these documents include tax materials (many of which were produced prior to the April 22, 2026, discovery conference

---

[5]Goldman Sachs contends that Ms. Lee violated this Court's order by not confirming in writing that she had conducted supplemental searches along with the production on May 13. Counsel (specifically, Ms. Van Dyk) understood that any supplemental searches and production needed to be done by that date (as they were), but understood that the written confirmation could be made in this report. To the extent counsel misunderstood the order, Ms. Van Dyk apologizes to the Court. But Ms. Lee conducted the supplemental searches before May 13 as required, and has confirmed the absence of additional non-email documents, apart from those produced on her behalf by the Robinson Entities.

before the Court), including K-1's showing investment income, stock purchase and investment acquisition agreements, wire transfer documents, Ms. Lee's personal financial statements prepared by the Robinson Entities, bank statements from Mr. Leissner and Ms. Lee's joint bank account, and/or operating documents showing the transfer of entities and investments.

As to Newland, Ms. Lee's personal financial statements show the estimated valuation of Newland and its subsidiary entities and investments over time, along with the investments held by those entities that account for their estimated value.[6] They also list Ms. Lee's bank and investment accounts, their current value, and the institution and account number for each. The remaining documents reflect the acquisition and dissipation of investments within Newland's corporate structure. For example, they include:

- The 2017 investment agreement between Keyway Pride and Mermaid Investment (KL005101) and documents showing the last known value of that investment as $0 (*e.g.*, KL005141, KL005150);

- Documents showing the 2017 incorporation of Keyway Pride, which is owned by Ms. Lee, and is a primary investment vehicle for Newland's holdings (KL004312);

- Documents showing investments and partnership interests held by Keyway Pride (*e.g.*, KL004562, KL004974 (reflecting investment into Blaze Ventures, including transfer of funds));

- Documents reflecting the transfer of capital into investments held by Newland's companies (*e.g.*, KL004188 (GT Biopharma); KL004239 (AVP volleyball league); KL004287, KL004293, KL004296 (PureForm); KL004285 (Baby Phat));

- Documents related to the status of an investment in Sentinent Technologies, including investments in 2017 and 2018 (*e.g.*, KL004301), along with documents regarding the dissolution of Sentinent Technologies and transfer of its assets to Evolv;

- Documents showing Ms. Lee's investment in Codage in 2013—***prior to her marriage to Mr. Leissner***—and the transfer of that interest to KLS Holdings, a company wholly owned by Ms. Lee under the Newland umbrella (*see* KL004170-75);

- The stock purchase agreement for PureForm Holdings, reflecting a $100,000 investment made by Keyway Pride (KL004176-87), along with documents

---

[6]Goldman Sachs's contention that the records produced by Ms. Lee and the Robinson Entities only show the value of assets as of 2022, again shows that they have not bothered to review the production before making lobbing accusations. The most recent personal financial statement identified and produced by Ms. Lee and the Robinson Entities reflects the value of Newland and its related entities and investments as of November 30, 2025.

reflecting the dissolution of PureForm through General Assignment in or around 2023 that resulted in no payout to its shareholders (KL005469);

- Documents identifying and tracing the $100,000 investment into Simtec, including bank statements showing electronic transfer records (KL004262) and documents reflecting the transfer of Simtec shares to Keyway Pride (KL004413); and

- Documents reflecting both the investment into Friendsurance and its ultimate sale in or around 2026 that resulted in no payout to investors with ordinary shares like those held by Newland (KL005078).

Counsel for Ms. Lee and the Robinson Entities is willing to meet and confer with counsel for Goldman Sachs to assist in locating documents in the production and answering questions. But the assertion that Ms. Lee and the Robinson Entities have "produced no documents showing the nature of the investments, the ownership of the investments, the acquisition of the investments, or where or how the investments are held," is patently false.

Goldman Sachs's accusations regarding the production of records related to the Celsius investment is similarly wrong. Ms. Lee and the Robinson Entities have produced documents showing Ms. Lee's purchase of shares, the location of those shares in Ms. Lee's JP Morgan Brokerage Account (*e.g.* KL005147)—which is the subject of a separate records subpoena by Goldman Sachs—and the preliminary order of forfeiture of all of those shares by the United States Government in *In re Forfeiture of Tim Leissner, et al.*, 23-MC-1505 (MKB) (JRC), currently pending in the Eastern District of New York. Ms. Lee, along with three additional claimants—none of which was Goldman Sachs—filed third party petitions asserting an interest in at least some of the shares. The disposition of those petitions has been the topic of years of litigation in the forfeiture action, with the Government standing in the shoes of Mr. Leissner to assert and forfeit his full interest in the Celsius shares held in Ms. Lee's account. The matter is still pending and there has not been a final order by the Court apportioning the shares. When such an order is issued, Ms. Lee will produce it to Goldman Sachs.

Goldman Sachs's casual assertion that this Court should require Ms. Lee to freeze any shares she may recover as a result of the forfeiture proceedings is extraordinary. Goldman Sachs has not even made an effort to meet the stringent requirements for prejudgment relief, nor could it, as its recourse to Mr. Leissner's Celsius assets was to file a petition in the forfeiture proceedings and litigate the question of whether Goldman Sachs—which plead guilty as Mr. Leissner's co-conspirator—has an interest in those assets superior to the United States. In any event, if Goldman Sachs seeks any form of prejudgment relief as to Ms. Lee's assets it should, at a minimum, be required to proceed by a noticed motion that can be fully litigated by the parties.

Respectfully submitted,

*/s/ Robert A. Sacks*

Robert A. Sacks
Nicole W. Friedlander

-6-

-7-

cc:  Benjamin Gluck
     Nicole Van Dyk
     Cameron Partovi
     (*Counsel for Kimora Lee, Robinson & Company LLC, and G. Robinson & Company, LLC*)

     Jamie Hoxie Solano
     (*Counsel for Kimora Lee, Robinson & Company LLC, and G. Robinson & Company, LLC*)

     Eugene Meyers
     Henry E. Mazurek
     (*Counsel for Respondent Tim Leissner*)