**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

GOLDMAN SACHS & CO. LLC, and THE GOLDMAN SACHS GROUP, INC.,

Petitioners,

-against-

TIM LEISSNER,

Respondent.

---------------------------------------------------------------------X

**23 Civ. 5266 (JLR) (GS)**

**ORDER**

**GARY STEIN, United States Magistrate Judge:**

On August 31, 2026, the Court held a discovery conference with respect to letter motions filed by Third-Party Movants LY Holdco Management LLC, Rapid Final Mile LLC, Rapid Logistics Couriers LLC, Rapid Medical Logistics LLC, and Triple Y Capital LLC (collectively, "Movants") to quash subpoenas from Petitioners directed at Movants' bank, City National Bank (Dkt. No. 106), and the Movants individually (Dkt. No. 109). Petitioners issued these subpoenas as part of their post-judgment discovery efforts to locate assets held by non-party Kimora Lee Simmons ("Lee"), which Petitioners contend ultimately belong to Lee's husband, Respondent Tim Leissner ("Leissner"), who is the judgment debtor in this case. (Dkt. Nos. 111 & 118).

For the reasons stated below, Movants' motion to quash the subpoenas directed to them individually is **DENIED** except with respect to the subpoenas' temporal scope. Movants' motion to quash the subpoena directed to City National Bank is held in abeyance at this time.

## LEGAL STANDARDS

"[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). Post-judgment discovery is governed by Federal Rule of Civil Procedure 69, which provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).

The scope of that discovery is constrained principally in that it must be calculated to assist in collecting on a judgment. *See id.*; Fed. R. Civ. P. 26(b)(1) (allowing a court to "order discovery of any matter relevant to the subject matter involved in the action"). "New York state's post-judgment discovery procedures, made applicable to proceedings in aid of execution by Federal Rule 69(a)(1), have a similarly broad sweep." *EM Ltd.*, 695 F.3d at 207. "As a general matter, however, post-judgment discovery against a non-party should be limited to a search for the [judgment debtor's] hidden assets." *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219 (PKC) (DF), 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012). Courts routinely allow judgment creditors to seek asset discovery from third parties who possess information pertaining to the judgment debtor's assets. *See EM Ltd.*, 695 F.3d at 207–08 (collecting cases).

Federal Rule of Civil Procedure 45 governs discovery subpoenas issued to non-parties. It "provides that: '[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.'" *Somaxon Pharms., Inc. v. Actavis Elizabeth LLC*, No. 22 Misc. 162 (KPF), 2022 WL 3577904, at *2 (S.D.N.Y. Aug. 18, 2022) (quoting Fed. R. Civ. P. 45(d)(3)(A)).

On a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Shaw v. Arena*, No. 17 Misc. 448 (AJN), 2018 WL 324896, at *1 (S.D.N.Y. Jan. 3, 2018) (cleaned up). Subpoenas issued under Rule 45 are "subject to the relevance requirement of Rule 26(b)(1)," *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011), which provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). "'Relevance' is construed 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Kiss Nail Prods., Inc. v. Lashify, Inc.*, No. 24 Misc. 25 (AT), 2024 WL 1466815, at *2 (S.D.N.Y. Apr. 4, 2024) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "To satisfy this standard, the moving party must articulate a concrete linkage between the discovery sought and the claims or

defenses asserted in the case." *Ekstein v. Poito Assoc.*, No. 20 Civ. 1878 (JCM), 2022 WL 783000, at *3 (S.D.N.Y. Mar. 15, 2022) (cleaned up).

Once relevance is established, "the movant bears the burden of demonstrating an undue burden." *Shaw*, 2018 WL 324896, at *1 (citation omitted). "Determining whether a subpoena imposes an undue burden 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it,' which 'calls upon the trial court to consider whether the information is necessary and whether it is available from any other source.'" *Kiss Nail Products*, 2024 WL 1466815, at *2 (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009)).

## DISCUSSION

Movants dispute the relevance and breadth of the subpoenas. (Dkt. No. 106 at 3; Dkt. No. 109 at 3). For the reasons given below, the Court finds that the material sought is relevant, but that the subpoenas directed to the individual entities are overbroad in part, and that the subpoena directed to City National Bank should be held in abeyance pending Movants' compliance with the subpoenas directed to them.

### A. Subpoenas Issued to Movants

Movants' relevance objections are unavailing. As referenced in Petitioners' opposition (*see* Dkt. No. 111 at 2–3) and explained during the August 31 conference, Lee made a series of loans to and investments in Movants, totaling millions of dollars, beginning in 2023. In addition, Lee charged millions of dollars on her credit

cards to one of the Movants, Rapid Logistics Couriers LLC, which then paid down Lee's credit card bills. (Dkt. No. 111 at 2–3). Petitioners further allege that information obtained in discovery shows that Movants' principal, Joseph Yemini, has given Lee financial advice and advice in connection with how to respond to Petitioners' requests in this case. (*Id.* at 1).

Movants argue that the material sought by Petitioners is irrelevant because Movants are "distinct entities with no connection to Leissner, Petitioners, or the underlying arbitration." (Dkt. No. 106 at 3; *see also* Dkt. No. 109 at 3). Movants are incorrect. This Court previously found that post-judgment discovery as to Lee's assets is proper in this action. That conclusion was based on Lee's close connection with Leissner as his spouse and evidence that Leissner had placed or transferred substantial assets to Lee or in her name (or that of her entities), creating "ample reason to believe that some of the assets" Lee characterizes as her own separate property "in fact belong to or were derived from Leissner." *Goldman Sachs & Co. LLC v. Leissner*, No. 23 Civ. 5266 (JLR) (GS), 2026 WL 657166, at *3 (S.D.N.Y. Mar. 9, 2026).

Petitioners represented at the August 31 conference that although Leissner previously transferred over $100 million into accounts for Lee and himself, Petitioners have been unable to locate virtually any of those assets to date. Having received information in the course of post-judgment discovery that Lee has engaged in transactions with Movants involving many of millions of dollars in recent years, Petitioners understandably are following the money trail to determine if there are

assets in Movants' hands that Petitioners can stake a claim to and if Movants otherwise have information about the location of potentially recoverable assets.

Contrary to Movants' suggestion, the reach of post-judgment discovery is not strictly limited to dealings between non-parties and the judgment debtor himself. (*See* Dkt. No. 106 at 2: Dkt. No. 109 at 3 & n.8). Rather, the scope of post-judgment discovery appropriately includes "any information reasonably calculated to lead to the discovery of a judgment debtor's assets." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2013 WL 57892, at *6 (S.D.N.Y. Jan. 4, 2013); *see also Goldman Sachs*, 2026 WL 657166, at *2 ("Courts routinely allow judgment creditors to seek asset discovery from third parties who possess information pertaining to the judgment debtor's assets."). The record here is sufficient to show that information in Movants' possession concerning their transactions with Lee may be relevant to Petitioners' efforts to locate assets that may be used to satisfy their judgment.

Nonetheless, the subpoenas issued to Movants are not appropriately limited in terms of their temporal scope. The subpoenas seek records going back to 2014, some twelve years ago. During the conference, and in pre-motion discussions with Movants' counsel, Petitioners said they were willing to limit the subpoenas to documents going back only to 2021. While this substantially narrows their scope , it still renders the subpoenas temporally overbroad as to most of the Movants.

Petitioners have represented that they have evidence of financial transactions between Lee and Rapid Logistics Couriers from January 2021.

Accordingly, production of documents dating as far back as 2021 is appropriate for that entity. However, Petitioners also have admitted that the earliest evidence of dealings between Lee and the other entities comes from June 2023.

Petitioners argue that the closeness between Yemini and Lee justifies production of documents from the remaining entities as far back as 2021. However, Movants are separate corporations that appear to have their own operations and dealings with Lee, and the nature of the transactions between Lee and Rapid Logistics Couriers differs in kind from the loan and investment transactions between Lee and the remaining Movants. And Movants' counsel represented at the conference that it was unaware of any relationship between these other Movants and Lee prior to 2023. Accordingly, the Court declines, at this time, to allow Petitioners to go as far back as January 1, 2021 for any Movants except for Rapid Logistics Couriers.

Given that Petitioners present evidence of financial dealings between Lee and these entities from June 2023, the Court allows Petitioners a short "bubble" period prior to that date which, when coupled with the production from Rapid Couriers Logistics, should suffice to determine whether production going back to 2021 would be appropriate for these entities. *See Flybar Inc. v. Express Trade Cap., Inc.*, No. 25 Civ. 618 (VSB) (GS), 2026 WL 1453579, at *4 (S.D.N.Y. May 22, 2026). Accordingly, the Court finds that the remaining entities shall produce responsive material going back to January 1, 2023.

### B. Subpoena Issued to City National Bank

The subpoena directed at Movants' bank accounts at City National Bank seeks much of the same information that Petitioners should be getting from Movants themselves, and/or from documents produced by Lee and the Robinson entities. (*Compare* Dkt. No. 106-1 at 11–12 *with*, *e.g.*, Dkt. No. 109-1 at 11–12). Courts generally seek to avoid requiring non-parties to produce duplicative material. *See, e.g.*, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701 (JPO) (JCF), 2013 WL 12173841, at *1 (S.D.N.Y. Dec. 9, 2013). While it may be appropriate to direct production of records from a neutral source such as a bank where there is concern that the accountholder may not possess the relevant records itself (or may be less than forthcoming in producing the records), *see Flybar*, 2026 WL 1453579, at *6, the record before the Court at this juncture does not furnish grounds for such a concern as it pertains to records of Movants' financial transactions with Lee.

Moreover, Petitioners' subpoena to City National Bank is significantly overbroad, seeking production of *all* of Movants' account records during the relevant period, even though only a tiny fraction of those records is likely to relate to Lee. The Court could narrow the scope of the subpoena to direct production only of those transactions relating to Lee and her entities, but that approach would impose significant burdens on the bank in having to comply with such a directive. *See Altamirano-Santiago v. Better Produce, Inc.*, No. CV193964DDPFFMX, 2020 WL 2303086, at *2 (C.D. Cal. Feb. 20, 2020).

For these reasons, the Court will decline to enforce the subpoena directed to City National Bank at this time. Movants should first produce documents pursuant to the subpoenas addressed to them, in accordance with this Order, before the bank should be required to produce what may be entirely duplicative documents that may also require significant redactions. Accordingly, the Court holds Movants' motion to quash the subpoena directed at City National Bank in abeyance pending Movants' own productions and a showing by Petitioners that further discovery from the bank is required.

Accordingly, the Movants' request to quash the subpoenas directed at them individually is **DENIED**, except with respect to the subpoenas' temporal scope. Rapid Logistics Couriers LLC shall produce responsive material from as far back as the beginning of 2021, and the remaining entities shall produce responsive material from as far back as the beginning of 2023. Movants' request to quash the subpoena directed at City National Bank is held in abeyance. The parties shall provide a status update as to this production by no later than 30 days after entry of this Order. The Clerk of Court is respectfully requested to close the motions pending at Docket Numbers 106 and 109.

**SO ORDERED.**

DATED: New York, New York
September 9, 2026

The Honorable Gary Stein
United States Magistrate Judge